CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant NAMRATA PATNAIK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 22-CR-00014 BLF |
|---|---|
| Plaintiff, | **DEFENDANT NAMRATA PATNAIK'S REPLY TO GOVERNMENT OPPOSITION TO MOTION TO DISMISS THE INDICTMENT** |
| vs. | |
| NAMRATA PATNAIK, | |
| Defendant. | |

## I. INTRODUCTION

The government claims only a jury can decide the issue of whether a specific false statement is material. The government is wrong. In a case like this, where as a matter of law the alleged false statements cannot be material to a Citizenship and Immigration Service (USCIS) decision to grant or deny an H-1B visa, the court can rule as a matter of law that the Indictment has not sufficiently alleged materiality and the court should dismiss the Indictment.

The false statements alleged in this Indictment can only be material if the statements were material to USCIS' decision. Both <u>ITServe Alliance, Inc. v. Cissna</u>, 443 F.Supp.3d 14 (D.D.C. 2020) and current Policy Memo 602-0114 clearly show that the allegedly false information provided in response to USCIS' demands was beyond the limits of the information Congress authorized USCIS to consider. Under <u>ITServe</u> and Policy Memo 602-0114, USCIS is not legally entitled to require applicants to specify the precise location of the job site or the particular project on which an applicant will work. Accordingly, information relating to those issues, whether accurate or not, cannot be considered material as a matter of law, and this Indictment should be dismissed.

The cases upon which the government relies for the argument that <u>ITServe</u> did not change the requirement that employers provide information about the precise location and job assignment of applicants – <u>United States v. Prasad</u>, 18 F.4th 313 (9th Cir. 2021) and <u>United States v. Narang</u>, No. 19-4850, 2021 WL 33484683 (4th Cir. Aug. 9, 2021) – did not even mention <u>ITServe</u> or USCIS' repudiation of the Neufeld Memo. Accordingly, <u>Prasad</u> and <u>Narang</u> provide no guidance regarding the question before the court: whether allegedly false statements regarding matters beyond factors USCIS has the statutory authority to consider can be material.

The government's argument that the decision in ITServe and USCIS' withdrawal of the Neufeld Memo changed the law and may not be applied retroactively is similarly unpersuasive. The ITServe decision and PM 602-0114 did not change the law, but instead brought USCIS into conformance with existing law.

The government's argument that the Indictment can survive because the Indictment alleges "benching" fares no better. The Indictment never mentions the word "benching." The closest the Indictment comes to an allegation of benching is an allegation that the defendants were creating a "pool"

of H-1B beneficiaries. See Indictment, at ⁋ 10. But creating a pool of H-1B beneficiaries is not a crime. As the government concedes by its reference to <u>Prasad</u> (GB 6), benching is only a crime if the benched employees are not paid, and there are no allegations that PerfectVIPS did not pay any of their employees. Accordingly, this court should dismiss this Indictment.

## II. RULING ON THE SUFFICIENCY OF THE INDICTMENT IS A MATTER OF LAW AND NOT A QUESTION FOR THE JURY.

Rule 12 allows a "party [to] raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). When a defendant moves to dismiss before trial, the indictment is subject to an exacting review and may not be liberally construed in favor of validity. See <u>United States v. Pirro</u>, 212 F.3d 86, 92 (2d Cir. 2000) ("The timing of the defendant's objection is important to the level of scrutiny employed; a defendant who objects to the indictment before trial, as Pirro has done, is entitled to a more exacting review of the indictment than one who waits until after trial to object."); <u>United States v. Pheaster</u>, 544 F.2d 353, 361 (9th Cir. 1976). (Defendants challenging an indictment after trial held to a higher standard than defendants challenging an indictment before trial.)

"Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues. Moreover, district courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." <u>United States v. Levin</u>, 973 F.2d 463, 467 (6th Cir. 1992); <u>United States v. Covington</u>, 395 U.S. 57, 60 (1969) (Rule 12(b)(4) "permits factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion").

Although the issue of whether a false statement is material to an agency decision is often a mixed question of fact and law typically resolved by juries (*see* <u>United States v. Gaudin</u>, 515 U.S. 506, 512 (1995); <u>United States v. Matsumaru</u>, 244 F.3d 1092, 1101 (9th Cir. 2001) (materiality in visa fraud is a mixed question of law and fact)), "a judge may rule that a false statement is *not* material as a matter of law, that is, that the evidence is insufficient for the jury to find the statement is material." <u>United States v. Serv. Deli</u>, 151 F.3d 938, 941 (9th Cir. 1998) (emphasis in original, citing <u>Gaudin</u>, 28 F.3d at 951. "The

materiality standard to be applied is a question of law."

In Russell v. United States, 369 U.S. 749 (1962), the defendants were charged with refusing to answer a question pertinent to the subject under inquiry before a congressional subcommittee, but the indictments did not specify the subject under inquiry. The Supreme Court emphasized that one important purpose of an indictment is "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had," Id. at 76, and reversed the convictions based on the indictment there which failed to specify the subject under inquiry. Id. at 755. Here, the Indictment fails to specify how the alleged false statements relate to any information that USCIS can require before granting a visa.

In United States v. Pirro, 212 F.3d 86 (2d Cir. 2000), the Second Circuit affirmed the dismissal of an indictment that failed to allege an element of the offense charged – namely, "a material falsehood or an omission that amounted to a material falsehood." 212 F.3d at 93. The indictment charged the defendant with failing to disclose on his tax return an "ownership interest" in certain properties, but the government failed to allege facts giving rise to a duty to disclose that interest. Id. The Pirro Court discussed Russell, and explained that "under the same principle, where an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense." Pirro, 212 F.3d at 93. The Pirro Court continued, "similarly, when one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." Id. (internal quotes omitted). "In sum, for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." Id. (emphasis added).

"In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." United States v. Gimbel, 830 F.2d 621, 624 (7th Cir. 1987). In Gimbel, the indictment alleged that by structuring his transactions, the defendant "had violated 18 U.S.C. § 2(b) and § 1001 which, in combination, bar an individual from causing another individual or entity to fail to disclose a material fact to the United States

government." The alleged "material facts" in the <u>Gimbel</u> indictment were allegations the defendant's structured currency transactions. The Court noted, and the government conceded, that for a fact to be "material," an individual or entity must have a duty to disclose it. The Court conducted an analysis of the Currency and Foreign Transactions Reporting Act of 1970 to determine whether the defendant's bank had a duty to disclose the structured transactions. <u>Id</u>.

The Court held that because the defendant's bank had no duty to report the defendant's structured transactions, the transactions did not constitute "material facts" within the meaning of 18 U.S.C. § 1001. <u>Id</u>. at 626.

Therefore, when a court finds the statements alleged to be false cannot be material to an agency's decision making, the court can rule an indictment fails to allege a crime.

### III. THE INDICTMENT FAILS TO DESCRIBE A CRIME BECAUSE IT FAILS TO SPECIFY ANY IMMIGRATION LAWS OR REGULATIONS WHICH WOULD MAKE THE ALLEGED FALSE STATEMENTS MATERIAL.

"An indictment fails to state an offense if it does not allege facts which, if proven, would constitute a violation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." <u>United States v. Carroll</u>, No. CR-13-0566 EMC, 2015 U.S. Dist. LEXIS 62914, at *3 (N.D. Cal. May 13, 2015) (internal quotes omitted; citing Fed.R.Crim.P. 7(c)(1) and <u>United States v. Caperell</u>, 938 F.2d 975, 979 (9th Cir. 1991)). "An indictment fails to state an offense if the specific facts alleged in it 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" <u>United States v. Vitillo</u>, 490 F.3d 314, 321 (3d Cir. 2007).

The government claims the Indictment sufficiently alleges materiality by quoting and italicizing Paragraph 17 of the Indictment, alleging that the defendants:

> knowingly made under oath, and subscribed as true under penalty of perjury under 28 U.S.C. § 1746, false statements *with respect to material facts in an application*, an affidavit, and a document required by the immigration laws and regulations prescribed thereunder, namely, in the I-129 Petitions and supporting documentation for H-1B nonimmigrant worker applicants, by falsely representing that the below-listed applicants would be employed by PerfectVIPs to work on PerfectVIPs in-house projects and contracts at PerfectVIPs' office locations, when the defendants knew at the time that these representations were false.

Gvt. Opp. at 2.

The particular allegedly false statements are set out in Paragraph 11 of the Indictment.

> The defendants caused to be submitted visa petitions and supporting documents falsely stating that the foreign workers would be working onsite at PerfectVIPs' office on internal projects. In actuality, the defendants did not intend for the beneficiaries to work at PerfectVIPs on internal projects. Instead, the defendants, through PerfectVIPs, contracted the workers out to end clients possessing actual work.

As we have repeatedly emphasized, an H-1B visa application only requires an employer (1) to agree to employ the applicant and (2) to demonstrate that employment will be in a specialty occupation. There is no requirement that the application specify the precise location of the work or the particular project on which an applicant will work. As we demonstrated in our opening brief, representations regarding the project an applicant will work on (the Indictment alleges PerfectVIPs' in-house projects and contracts) and where that work will be done (the Indictment alleges at PerfectVIPs office locations) could not have been a *material* misrepresentation to immigration officials because the alleged false statements were not "capable of affecting or influencing a governmental decision" as a matter of law. United States v. Matsumaru, 244 F.3d 1092, 1101 (9th Cir. 2001). The alleged false statements regarding the jobsite location and the project on which an applicant would work are not relevant to USCIS' inquiry, which is limited by policy and statute to a determination of whether an applicant will work in a "specialty occupation." 8 U.S.C. § 1184(i). The alleged false statements regarding the specific project and location were in response to questions seeking to enforce the rescinded Neufeld policy memorandum, and the current Policy Memo 602-0114 states clearly: "The officer may not apply the prior rescinded guidance." PM-602-0114 at 2. Information that USCIS' own memos say may not be applied simply cannot be material.

Under the law and valid regulations, the only relevant inquiries are whether the applicant will be performing a specialty occupation, 8 U.S.C. § 1184(i), and in what Metropolitan Statistical Area (MSA) that job will be performed. Matter of Simeio Solutions, LLC, 26 I&N Dec. 542 (AAO 2015); PM-602-0120; 20 CFR 655.734. The additional detail USCIS illegally sought cannot be material to a valid USCIS decision because USCIS' demands for specific project and location information were based on the withdrawn Neufeld Memo and a February 2018 Policy Memo, PM-602-0157, both of which were

ruled to be arbitrary and capricious and in excess of statutory authority in <u>ITServe.</u>

Paragraphs 6, 7, and 9 of the Indictment claim that the Labor Condition Application, the I-129 Petition, and the H-1B visa applications "require" certain information. The claim that government <u>forms</u> "require" information, however, falls short of a claim that a <u>specific immigration statute or regulation</u> requires that information. As we pointed out in our Opening Memoranda at page 11, the H-1B visa application form has not been updated to comply with <u>ITServe</u> and PM 602-0114, and asks for information USCIS does not have the right to require.

The Indictment here fails to plead the materiality of each alleged false statement because the Indictment fails to describe how the statements were required under immigration laws or regulations.

Finally, as we set forth in our opening brief, the Supreme Court has explained that materiality in the immigration context is an objective test that focuses on whether "knowledge of the real facts would have affected a reasonable government official *properly applying* [immigration] law." <u>Maslenjak v. United States</u>, ___ U.S. ___, 137 S. Ct. 1918, 1923 (2017) (emphasis added). To be material, a false statement must tend to conceal a statutorily disqualifying fact. <u>United States v. Alferahin</u>, 433 F.3d 1148, 1155 (9th Cir. 2006).

Here, the Indictment fails to set forth any immigration law or regulation that requires an applicant to provide the information the government claims was false, and it would be impossible to amend the Indictment to allege defendants' answers were material because the Neufeld Memo which led to the inquiry was invalid at the time the statements were made. See <u>ITServe</u>, 443 F.Supp.3d; <u>Serenity Info Tech, Inc. v. Cuccinelli</u>, 461 F.Supp.3d 1271 (N.D. Ga. 2020); <u>Thatikonda v. United States Citizen & Immigration Servs.</u>, Civil Action No. 19-685 (RC), 2020 U.S. Dist. LEXIS 78762 (D.D.C. May 5, 2020); <u>Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs.</u>, Civil Action No. 18-2015 (RC), 2020 U.S. Dist. LEXIS 103551, at *23 (D.D.C. June 12, 2020).

### IV. THE CASES ON WHICH THE GOVERNMENT RELIES DID NOT CONSIDER <u>ITSERVE</u> AND THE WITHDRAWAL OF THE NEUFELD MEMO.

As we demonstrated in our opening brief, USCIS has long been hostile to staffing companies and through the Neufeld Memo illegally imposed extra burdens on H-1B applications related to staffing companies. While the Neufeld Memo was in effect, USCIS, in excess of its statutory authority, sought to

require applicants to provide granular detail regarding the location of the job site and the specific project an applicant would perform. As we have discussed, that demand for information was in excess of USCIS' statutory authority, and USCIS has now recognized it was asking too much and has issued a new policy memo recognizing the limits of permissible inquiry.

The cases on which the government relies reflect the attempted expansion and fundamental misunderstanding of the law set out in the Neufeld Memo and its application to staffing companies. In United States v. Prasad, 18 F.4th 313, 316 (9th Cir. 2021) the Court specifically relied upon the withdrawn Neufeld Memo when it was evaluating the falsity, and implicitly the materiality of the false statements made by the defendant. Now that USCIS has effectively acknowledged that the Neufeld Memo misstated the law and that USCIS went beyond its statutory authority, this court should follow the law, rather than a withdrawn attempted expansion of immigration restrictions.

In United States v. Narang, No. 19-4850, 2021 WL 3484683 (4th Cir. Aug. 9, 2021), the court found Narang's false statements were material because there was no dispute that a Form I-129 petition required the information, and because there was "USCIS adjudicator testimony that these statements would be considered material when considering whether to accept an H-1B petition, *particularly for staffing companies, which the agency more carefully scrutinizes*." Narang, 2021 U.S. App. LEXIS 23566 *22, 24 (emphasis added). Because USCIS has now recognized there is no legal basis for more carefully scrutinizing applications from staffing companies, the testimony on which the Narang court relied is not available nor relevant to this court's, or any court's decision. Details of the project and location are immaterial, and USCIS' antipathy towards staffing companies is no longer part of the decision-making process for H-1B petitions. Accordingly, Narang is no longer good law, and has been superseded by the withdrawal of the Neufeld Memorandum and its replacement with PM 62-0114.

**V.  THERE IS NO RETROACTIVITY ISSUE. THERE HAS BEEN NO CHANGE IN THE LAW. COURTS AND USCIS HAVE RECOGNIZED THAT UCSIS' REQUESTS FOR GRANULAR LOCATION AND PROJECT INFOMRATION ARE NOT AUTHORIZED BY STATUTE**

The government's retroactivity argument is a red herring, but demonstrates that the defense is correct on the law. The government's retroactivity argument requires this court to assume that the Neufeld Memo had the force of law. However, both the court in ITServe, and USCIS itself, agreed that

USCIS had no authority to seek the information it sought under the Neufeld Memo. Accordingly, continued application of the Neufeld Memo would be arbitrary and capricious. ITServe, 443 F.Supp.3d at 31. The government has no right to continue to apply illegal and withdrawn policies in a criminal case. There has been no change in the law we are trying to make retroactive. There has only been a recognition by the courts and USCIS that USCIS' previous application of the law was in excess of its statutory authority.

## VI. THE INDICTMENT DOES NOT ALLEGE "BENCHING" AND PERFECTVIPS DID NOT ILLEGALLY BENCH EMPLOYEES.

The Opposition claims that:

> The Indictment describes and alleges the fraudulent practice known as "benching." "Benching occurs when an unscrupulous employer uses H–1B visas to recruit foreign workers *not to fill a specific position at the company itself, but rather to create a pool of relatively inexpensive skilled labor that can then be used on an as-needed basis to fulfill the needs of third-party clients*." Citing United States v. Nanda, 867 F.3d 522, 526 (5th Cir. 2017).

(Gvt. Op. at 6)

First, the Indictment does not contain any allegations of benching. Second, the Opposition's descriptions of "benching" and Nanda, omits a critical fact and misstates the law. As the government's reference to United States v. Prasad, 18 F.4th 313 (9th Cir. 2021) demonstrates, benching occurs when an employer uses H-1B visas to recruit foreign workers to create a pool of <u>unpaid</u> skilled labor; and in Nanda and Prasad, the employers did not pay the benched employees; Nanda at 526; Prasad at 317. H-1B employers may legally "bench" H-1B employees by temporarily placing them in a nonproductive status as long as the employer continues to pay them; 8 U.S.C. § 1182(n)(2)(C)(vii)(I); ItServe All., Inc. v. Cissna, 443 F. Supp. 3d 14, 42 (D.D.C. 2020); and the Indictment contains no allegations that PerfectVIPS failed to pay its employees.

## VII. CONCLUSION

The Indictment fails to describe a crime, because there are no immigration laws or regulations that required the alleged false statements. The request for that information exceeded USCIS' statutory

authority, and USCIS adjudicators are not supposed to require the granular location and project description demanded here in determining whether to grant a visa. The alleged false statements were immaterial, and the Indictment fails to state a crime. Accordingly, we request this Court dismiss the Indictment.

Dated: December 20, 2022       Respectfully submitted,

                               /s/
                               Christopher J. Cannon
                               Matthew A. Laws
                               Attorneys for NAMRATA PATNAIK